UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

IN RE:                        )

                            )    Case No. 11-37039 ABC

WESCOIN, LLLP,            )

EIN: 84-1478167          )    Chapter 11

                            )

    Debtor.                 )

## MOTION FOR APPROVAL OF SALE OF REAL PROPERTY
## FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

The Debtor, by and through its attorneys, Kutner Miller Brinen, P.C., moves the Court pursuant to 11 U.S.C. §363 and Bankruptcy Rule 6004 and 9014 for entry of an Order approving a Contract to Buy and Sell Real Estate (Commercial) and authorizing the Debtor to sell certain real property free and clear of liens, claims, and encumbrances, and as grounds therefore states as follows:

1.       The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on November 17, 2011 and the Debtor remains a Debtor-in-Possession.

2.       The parcel of property which is the subject of this Motion consists of a single retail condominium unit located at 941 Lincoln Avenue, Steamboat Springs, Colorado 80487 and is a portion of Units 100F and 100G ("Property"). This unit is being purchased by the purchaser to increase the size of the purchaser's existing restaurant property presently located in Unit 100E within the Debtor's Victoria building. The purchaser is currently renting the same property as that being purchased.

3.       The Property is subject to a first mortgage held by Wells Fargo Bank, N.A. ("Wells Fargo"). The amount of the Wells Fargo claim is approximately $7,800,000. However, the Wells Fargo claim is secured not only by the Property which is the subject of this sale and Motion but is also secured by additional real property consisting of the Victoria Building within which the Property is located as well as two office warehouse buildings generally referred to as the Wescoin Building and the Wescoin Business Center, both located in Steamboat Springs, Colorado. The Debtor believes that the total package of collateral for the Wells Fargo loan is sufficient to generate enough proceeds to pay off the Wells Fargo claim over time.

4.     The Debtor has entered into a Contract to Buy and Sell Real Estate ("Contract"). The Contract was the subject of substantial negotiation by and between the Debtor and the prospective purchaser. A number of counterproposals were negotiated by the parties. A copy of the Contract and all related documents is attached hereto and incorporated herein as Exhibit A.

5.     The Contract provides for the sale of the Property at a purchase price of $283,800. The Debtor believes that the proposed purchase price is fair and reasonable for the subject Property and represents the fair market value of the Property. The principal terms of the Contract are:

A.   The Purchaser, Formosa Group, LLC ("Buyer") is to pay the purchase price of $283,800 as follows: option payments of $23,500, rent payments of $29,800, and a new loan of $200,000, and additional cash at closing of $30,500;

B.   The Debtor shall transfer to the Buyer the Property pursuant to the Contract; and

C.   The Contract is scheduled to close in November, however, the closing date will be extended to early January 2012 to accommodate the Debtor's timing.

6.     The sale of the Property pursuant to the Contract is subject to Bankruptcy Court approval which is being requested pursuant to this Motion.

7.     Sale of the Property is requested to occur free and clear of liens, claims, and encumbrances. All liens and claims will attach to the proceeds of sale in the order of their priorities and paid as requested herein.

8.     Upon closing with respect to the Contract, the sale proceeds will be distributed as follows:

A.     Payment of real estate broker's commission of 6% of the gross purchase price;

B.     Payment of outstanding real estate taxes;

C.     Payment of nominal closing costs of sale and additional fees pursuant to the terms of the Contract; and

D.     Payment to Wells Fargo of 80% of the net sale proceeds on account of its secured claim.

9.      The Debtor is requesting authorization to sell the Property free and clear of liens, claims, and encumbrances.   Section 363(f) of the Bankruptcy Code authorizes the debtor-in-possession to sell property under Section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

a.      Applicable non-bankruptcy law permits the sale of such property free and clear of such interests;

b.      Such entity consents;

c.      Such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of all liens on such property;

d.      Such interest is in a bona fide dispute; or

e.      Such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

10.     Sale of the Property pursuant to the Contract is appropriate under 11 U.S.C. §363(f) because the security interest in the Property is a lien and the price and applicable non-bankruptcy law would permit the sale of the Property free and clear of the Wells Fargo lien.  In addition, Wells Fargo could be compelled in a legal or equitable proceeding to accept money in satisfaction of its secured claim.

11.     The Purchaser under the Contract is an independent third party, is unrelated to the Debtor, and is purchasing the Property in good faith.

12.     Approval of the Contract is in the best interest of the Debtor, its creditors, and the estate as it allows the Debtor to reduce its secured debt and sell the Property at a fair market value.

13.     The Debtor's request a waiver of the 14 day stay of the order entered approving this Contract  pursuant to Bankruptcy Rule 6004(h) because the Property is being sold for fair market value to a third party purchaser.

WHEREFORE, the Debtor prays that the Court make and enter an Order:

A.     Approving the Contract attached hereto as Exhibit A;

B.     Authorizing the Debtor to sell the Property free and clear of all liens, claims, and encumbrances;

C. Authorize the Debtor to utilize the proceeds of sale and distribute the funds in accordance with the Contract and paragraph 8 of this Motion; and

D. Granting the Debtor such further and additional relief as to the Court may appear proper.

DATED: November 17, 2011

Respectfully submitted,

By: _____

Lee M. Kutner #10966
**KUTNER MILLER BRINEN, P.C.**
303 East 17th Avenue, Suite 500
Denver, CO 80203
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
Email: lmk@kutnerlaw.com

Ski Town Commercial, LLC
729 Pine Street
P. O. Box 773791
Steamboat Springs , CO 80477
Phone: 970-871-0002
jonwsanders@skitowncommercial.com

1  | The printed portions of this form, except differentiated additions, have been approved by the Colorado Real Estate Commission. (CBS3-8-10) (Mandatory 1-11)

2

3   THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR
4   OTHER COUNSEL BEFORE SIGNING.

5

6                     CONTRACT TO BUY AND SELL REAL ESTATE
7                                 (COMMERCIAL)
8                      (Not to be used for Residential Properties)

9

10                                                          Date: **October 12, 2011**
11
12                              [ **AGREEMENT** ]

13  1.   **AGREEMENT.** Buyer, identified in § 2.1, agrees to buy, and Seller, identified in § 2.3, agrees to sell, the Property
14  described below on the terms and conditions set forth in this contract (Contract).

15  2.   **PARTIES AND PROPERTY.**
16       2.1.   **Buyer.** Buyer,
         **Formosa Group, LLC**
17       , will take title to the real property described below as ☐ **Joint Tenants** ☐ **Tenants In Common** ☑ **Other**
18       **Colorado Limited Liability Company**                                                          .
19       2.2.   **Assignability and Inurement.** This Contract ☐ **Shall** ☑ **Shall Not** be assignable by Buyer without Seller's
20       prior written consent. Except as so restricted, this Contract shall inure to the benefit of and be binding upon the heirs,
21       personal representatives, successors and assigns of the parties.
22       2.3.   **Seller.** Seller,
         **Wescoin, LLLP**
23       , is the current owner of the Property described below.
24       2.4.   **Property.** The Property is the following legally described real estate in the County of
25       **Routt**                                    , Colorado:
         **See Exhibit A**
26       known as No.
27       **941 Lincoln Ave. Steamboat Springs, Colorado 80487**
28       Street Address                                     City            State           Zip
29       together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto, and all
30       interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded (Property).
31       2.5.   **Inclusions.** The Purchase Price includes the following items (Inclusions):
32              2.5.1.   **Fixtures.** If attached to the Property on the date of this Contract: lighting, heating, plumbing,
33              ventilating and air conditioning fixtures, inside telephone, network and coaxial (cable) wiring and connecting
34              blocks/jacks, floor coverings, intercom systems, sprinkler systems and controls.
35       **Other Fixtures:**



**Exhibit A**

**Any Attached**

36  If any fixtures are attached to the Property after the date of this Contract, such additional fixtures are also included in the
37  Purchase Price.

38  **2.5.2.   Personal Property.** If on the Property whether attached or not on the date of this Contract: awnings,
39  blinds, window coverings, storage sheds, and all keys. If checked, the following are included: ☐ Water
40  Softeners ☑ Smoke/Fire Detectors ☑ Security Systems ☐ Satellite Systems (including satellite dishes).

41  **Other Personal Property:**

**None**

42  The Personal Property to be conveyed at Closing shall be conveyed, by Seller, free and clear of all taxes (except
43  personal property taxes for the year of Closing), liens and encumbrances, except

**None**

44  Conveyance shall be by bill of sale or other applicable legal instrument.

45  **2.5.3.   Trade Fixtures.** With respect to trade fixtures, Seller and Buyer agree as follows:

**All Owned by Buyer**

46  The Trade Fixtures to be conveyed at Closing shall be conveyed, by Seller, free and clear of all taxes (except
47  personal property taxes for the year of Closing), liens and encumbrances, except

48  **None**

49  Conveyance shall be by bill of sale or other applicable legal instrument.

50  **2.5.4.   Parking and Storage Facilities.** ☐ Use Only ☑ Ownership of the following parking facilities:

**Parking Space #20 - As a limited common element or as described in HOA docs**

51  ; and ☐ Use Only ☐ Ownership of the following storage facilities:

**None**

52  **2.5.5.   Water Rights, Water and Sewer Taps.** The following legally described water rights:

**None**

53  ~~Any water rights shall be conveyed by ☐~~ _____
54  ~~Deed ☐  Other applicable legal instrument. The Well Permit # is~~ _____ ~~.~~
55  ~~2.5.5.1.   ☐  Water Stock Certificates:~~

56
57  ~~2.5.5.2.   ☐  Water Tap~~        ~~☐  Sewer Tap~~

58  **Note: Buyer is advised to obtain, from the provider, written confirmation of the amount remaining to be paid, if any,**
59  **time and other restrictions for transfer and use of the tap.**

60  **2.6.   Exclusions.** The following items are excluded (Exclusions):

**None**

61
62  **3.   DATES AND DEADLINES.**

| Item No. | Reference | Event | Date or Deadline |
|---|---|---|---|
| 63 | | | |
| 64  1 | § 4.2.1 | Alternative Earnest Money Deadline | |
| 65 | | **Title and CIC** | |
| 66  2 | §7.1 | Title Deadline | **APD + 5 Days** |
| 67  3 | §7.2 | Exceptions Request Deadline | |
| 68  4 | § 8.1 | Title Objection Deadline | **APD + 8 Days** |
| 69  5 | § 8.2 | Off-Record Matters Deadline | |
| 70  6 | § 8.2 | Off-Record Matters Objection Deadline | |



| | | | | |
|---|---|---|---|---|
| 71 | 7 | § 7.4.4.1 | CIC Documents Deadline | |
| 72 | 8 | § 7.4.5 | CIC Documents Objection Deadline | |
| 73 | 9 | § 8.6 | Right Of First Refusal Deadline | |
| 74 | | | **Seller's Property Disclosure** | |
| 75 | 10 | §10.1 | Seller's Property Disclosure Deadline | |
| 76 | | | **Loan and Credit** | |
| 77 | 11 | § 5.1 | Loan Application Deadline | |
| 78 | 12 | § 5.2 | Loan Conditions Deadline | |
| 79 | 13 | § 5.3 | Buyer's Credit Information Deadline | |
| 80 | 14 | § 5.3 | Disapproval of Buyer's Credit Information Deadline | |
| 81 | 15 | § 5.4 | Existing Loan Documents Deadline | |
| 82 | 16 | § 5.4 | Existing Loan Documents Objection Deadline | |
| 83 | 17 | § 5.4 | Loan Transfer Approval Deadline | |
| 84 | | | **Appraisal** | |
| 85 | 18 | § 6.2.2 | Appraisal Deadline | APD + 5 Days |
| 86 | 19 | § 6.2.2 | Appraisal Objection Deadline | APD + 8 Days |
| 87 | | | **Survey** | |
| 88 | 20 | § 7.3 | Survey Deadline | APD |
| 89 | 21 | § 8.3.2 | Survey Objection Deadline | APD |
| 90 | | | **Inspection and Due Diligence** | |
| 91 | 22 | § 10.2 | Inspection Objection Deadline | |
| 92 | 23 | § 10.3 | Inspection Resolution Deadline | |
| 93 | 24 | § 10.5 | Property Insurance Objection Deadline | |
| 94 | 25 | § 10.6 | Environmental Inspection Objection Deadline | |
| 95 | 26 | § 10.6 | ADA Evaluation Objection Deadline | |
| 96 | 27 | § 10.7 | Due Diligence Documents Delivery Deadline | |
| 97 | 28 | § 10.8.1 | Due Diligence Documents Objection Deadline | |
| 98 | 29 | § 11.2 | Tenant Estoppel Statements Deadline | |
| 99 | 30 | § 11.3 | Tenant Estoppel Statements Objection Deadline | |
| 100 | | | **Closing and Possession** | |
| 101 | 31 | § 12.3 | **Closing Date** | November 11, 2011 |
| 102 | 32 | § 12.1 | Closing Documents Delivery Deadline | November 8, 2011 |
| 103 | 33 | § 17 | Possession Date | At Closing |
| 104 | 34 | § 17 | Possession Time | At Closing |



| | | | | |
|---|---|---|---|---|
| 105 | 35 | §28 | Acceptance Deadline Date | October 14, 2011 |
| 106 | 36 | §28 | Acceptance Deadline Time | 5:00 p.m. |
| 107 | | | Amended Plat Date (APD) Deadline | ASAP |
| 108 | | | Amended Plat Date (APD) Objection | APD + 8 Days |

109 Note: Applicability of Terms. A check or similar mark in a box means that such provision is applicable. The abbreviation
110 "N/A" or the word "Deleted" means not applicable and when inserted on any line in Dates and Deadlines (§ 3), means that
111 the corresponding provision of the Contract to which reference is made is deleted. The abbreviation "MEC" (mutual execution
112 of this Contract) means the date upon which both parties have signed this Contract.

113 **4.    PURCHASE PRICE AND TERMS.**

114     **4.1.    Price and Terms.** The Purchase Price set forth below shall be payable in U.S. Dollars by Buyer as follows:

| Item No. | Reference | Item | Amount | Amount |
|---|---|---|---|---|
| 1 | § 4.1 | Purchase Price | $        283,800.00 | |
| 2 | § 4.2 | Earnest Money | | $              0.00 |
| 3 | § 4.5 | New Loan | | 200,000.00 |
| 4 | § 4.6 | Assumption Balance | | |
| 5 | § 4.7 | Seller or Private Financing | | |
| 6 | | Option Payments | | 23,500.00 |
| 7 | | Rent Payments | | 29,800.00 |
| 8 | § 4.3 | Cash at Closing | | 30,500.00 |
| 9 | | TOTAL | $        283,800.00 | $        283,800.00 |

115     **4.2.    Earnest    Money.**    The    Earnest    Money    set    forth    in    this    section,    in    the    form    of
116 **None**_____ , shall be payable to and held by
117 _____ (Earnest Money Holder), in its trust account, on
118 behalf of both Seller and Buyer. The Earnest Money deposit shall be tendered with this Contract unless the parties
119 mutually agree to an **Alternative Earnest Money Deadline** (§ 3) for its payment. If Earnest Money Holder is other than
120 the Brokerage Firm identified in § 32 or § 33, Closing Instructions signed by Buyer, Seller and Earnest Money Holder
121 must be obtained on or before delivery of Earnest Money to Earnest Money Holder. The parties authorize delivery of the
122 Earnest Money deposit to the company conducting the Closing (Closing Company), if any, at or before Closing. In the
123 event Earnest Money Holder has agreed to have interest on Earnest Money deposits transferred to a fund established for
124 the purpose of providing affordable housing to Colorado residents, Seller and Buyer acknowledge and agree that any
125 interest accruing on the Earnest Money deposited with the Earnest Money Holder in this transaction shall be transferred
126 to such fund.

127         **4.2.1.    Alternate Earnest Money Deadline.** The deadline for delivering the Earnest Money, if other than at
128         the time of tender of the Contract is as set forth as the **Alternative Earnest Money Deadline** (§ 3).

129         **4.2.2.    Return of Earnest Money.** If Buyer has a right to terminate this Contract and timely terminates, Buyer
130         shall be entitled to the return of Earnest Money as provided in this Contract. If this Contract is terminated as set
131         forth in § 25 and, except as provided in § 24, if the Earnest Money has not already been returned following
132         receipt of a Notice to Terminate or other written notice of termination, Seller agrees to execute and return to
133         Buyer or Broker working with Buyer, written mutual instructions, i.e., Earnest Money Release form, within three
134         days of Seller's receipt of such form.

135     **4.3.    Form of Funds; Time of Payment; Funds Available.**

136         **4.3.1.    Good Funds.** All amounts payable by the parties at Closing, including any loan proceeds,



137 Cash at Closing and closing costs, shall be in funds that comply with all applicable Colorado laws,
138 including electronic transfer funds, certified check, savings and loan teller's check and cashier's
139 check (Good Funds).

140 **4.3.2.   Available Funds.** All funds required to be paid at Closing or as otherwise agreed in writing between
141 the parties shall be timely paid to allow disbursement by Closing Company at Closing **OR SUCH PARTY**
142 **SHALL BE IN DEFAULT.** Buyer represents that Buyer, as of the date of this Contract, ☑ Does ☐ Does Not
143 have funds that are immediately verifiable and available in an amount not less than the amount stated as Cash at
144 Closing in § 4.1.

~~**4.4.**   **Seller Concession.** Seller, at Closing, shall pay or credit, as directed by Buyer, a total amount of~~
146 ~~$ 0.00~~                       ~~to assist with Buyer's closing costs (Seller Concession). Seller Concession is in addition to~~
147 ~~any sum Seller has agreed to pay or credit Buyer elsewhere in this Contract. Seller Concession shall be reduced to the~~
148 ~~extent it exceeds the aggregate of what is allowed by Buyer's lender, but in no event shall Seller pay or credit an amount~~
149 ~~for Seller Concession that exceeds the lesser of (1) the stated amount for Seller Concession or (2) Buyer's closing costs.~~

~~**4.5.**   **New Loan:**~~

~~**4.5.1.**   **Buyer to Pay Loan Costs.** Buyer, except as provided in § 4.4, if applicable, shall timely pay Buyer's~~
152 ~~loan costs, loan discount points, prepaid items and loan origination fees, as required by lender.~~

~~**4.5.2.**   **Buyer May Select Financing.** Buyer may select financing appropriate and acceptable to Buyer,~~
154 ~~including a different loan than initially sought, except as restricted in § 29, Additional Provisions.~~

~~**4.6.**   **Assumption.** Buyer agrees to assume and pay an existing loan in the approximate amount of the Assumption~~
156 ~~Balance set forth in § 4.1, presently payable at $                    per                    including~~
157 ~~principal and interest presently at              % per annum, and also including escrow for the following as~~
158 ~~indicated: ☐ Real Estate Taxes ☐ Property Insurance Premium and~~
159 ~~☐                                                      .~~
~~Buyer agrees to pay a loan transfer fee not to exceed $                    . At the time of assumption, the new~~
161 ~~interest rate shall not exceed              % per annum and the new payment shall not exceed~~
162 ~~$              per              principal and interest, plus escrow, if any. If the actual~~
163 ~~principal balance of the existing loan at Closing is less than the Assumption Balance, which causes the amount of cash~~
164 ~~required from Buyer at Closing to be increased by more than $              , then ☐ Buyer May~~
165 ~~Terminate this Contract effective upon receipt by Seller of Buyer's written notice of termination or~~
166 ~~☐                                                      .~~
~~Seller ☐ Shall ☐ Shall Not be released from liability on said loan. If applicable, compliance with the requirements for~~
168 ~~release from liability shall be evidenced by delivery ☐ on or before Loan Transfer Approval Deadline ☐ at~~
169 ~~Closing of an appropriate letter of commitment from lender. Any cost payable for release of liability shall be paid by~~
170 ~~                    in an amount not to exceed $              .~~

~~**4.7.**   **Seller or Private Financing.** Buyer agrees to execute a promissory note payable to~~
172 ~~                    , as ☐ Joint Tenants ☐ Tenants In~~
173 ~~Common ☐ Other              , on the note form as indicated:~~
~~☐ (Default Rate) NTD81-10-6 ☐ Other              ;~~
175 ~~secured by a              (1st, 2nd, etc.) deed of trust encumbering the Property, using the form as indicated:~~
~~☐ Due on Transfer - Strict (TD72-8-10) ☐ Due on Transfer - Creditworthy (TD73-8-10) ☐ Assumable - Not~~
177 ~~Due On Transfer (TD74-8-10) ☐ Other              .~~

~~The promissory note shall be amortized on the basis of              ☐ Years ☐ Months, payable at~~
179 ~~$              per              including principal and interest at the rate of~~
180 ~~              % per annum. Payments shall commence              and shall be due on~~
181
182 ~~the              day of each succeeding              . If not sooner paid, the balance of principal~~
183 ~~and accrued interest shall be due and payable              after Closing. Payments~~



184  ☐ Shall ☐ Shall Not be increased by _____ of estimated annual real estate taxes, and

185  ☐ Shall ☐ Shall Not be increased by _____ of estimated annual property insurance

186  premium. The loan shall also contain the following terms: (1) if any payment is not received within

187  _____ days after its due date, a late charge of _____ % of such payment shall be due; (2)

188  interest on lender disbursements under the deed of trust shall be _____ % per annum; (3) default

189  interest rate shall be _____ % per annum; (4) Buyer may prepay without a penalty except

     ; and (5) Buyer ☐ Shall ☐ Shall Not execute and deliver, at Closing, a Security Agreement and UCC-1 Financing

192  Statement granting the holder of the promissory note a _____ (1st, 2nd, etc.) lien on the personal property included

193  in this sale.

     Buyer ☐ Shall ☐ Shall Not provide a mortgagee's title insurance policy, at Buyer's expense.

---

**TRANSACTION PROVISIONS**

---

**5.   FINANCING CONDITIONS AND OBLIGATIONS.**

**5.1.   Loan Application.** If Buyer is to pay all or part of the Purchase Price by obtaining one or more new loans (New

197  Loan), or if an existing loan is not to be released at Closing, Buyer, if required by such lender, shall make an application

198  verifiable by such lender, on or before **Loan Application Deadline (§ 3)** and exercise reasonable efforts to obtain such

199  loan or approval.

**5.2.   Loan Conditions.** If Buyer is to pay all or part of the Purchase Price with a New Loan, this Contract is

201  conditional upon Buyer determining, in Buyer's sole subjective discretion, whether the New Loan is satisfactory to

202  Buyer, including its availability, payments, interest rate, terms, conditions, and cost of such New Loan. This condition is

203  for the benefit of Buyer. If such New Loan is not satisfactory to Buyer, Seller must receive written notice to terminate

204  from Buyer, no later than **Loan Conditions Deadline (§ 3)**, at which time this Contract shall terminate. IF SELLER

205  DOES NOT TIMELY RECEIVE WRITTEN NOTICE TO TERMINATE, THIS CONDITION SHALL BE

206  DEEMED WAIVED, AND BUYER'S EARNEST MONEY SHALL BE NONREFUNDABLE, EXCEPT AS

207  OTHERWISE PROVIDED IN THIS CONTRACT (e.g., Appraisal, Title, Survey).

**5.3.   Credit Information and Buyer's New Senior Loan.** If Buyer is to pay all or part of the Purchase Price by

209  executing a promissory note in favor of Seller, or if an existing loan is not to be released at Closing, this Contract is

210  conditional (for the benefit of Seller) upon Seller's approval of Buyer's financial ability and creditworthiness, which

211  approval shall be at Seller's sole subjective discretion. In such case: (1) Buyer shall supply to Seller by **Buyer's Credit**

212  **Information Deadline (§ 3)**, at Buyer's expense, information and documents (including a current credit report)

213  concerning Buyer's financial, employment and credit condition and Buyer's New Senior Loan, defined below, if any; (2)

214  Buyer consents that Seller may verify Buyer's financial ability and creditworthiness; (3) any such information and

215  documents received by Seller shall be held by Seller in confidence, and not released to others except to protect Seller's

216  interest in this transaction; and (4) in the event Buyer is to execute a promissory note secured by a deed of trust in favor

217  of Seller, this Contract is conditional (for the benefit of Seller) upon Seller's approval of the terms and conditions of any

218  New Loan to be obtained by Buyer if the deed of trust to Seller is to be subordinate to Buyer's New Loan (Buyer's New

219  Senior Loan). Additionally, Seller shall have the right to terminate, at or before Closing, if the Cash at Closing is less

220  than as set forth in § 4.1 of this Contract or Buyer's New Senior Loan changes from that approved by Seller. If Seller

221  does not deliver written notice to terminate to Buyer based on Seller's disapproval of Buyer's financial ability and

222  creditworthiness or of Buyer's New Senior Loan by **Disapproval of Buyer's Credit Information Deadline (§ 3)**, then

223  Seller waives the conditions set forth in this section as to Buyer's New Senior Loan as supplied to Seller. If Seller

224  delivers written notice to terminate to Buyer on or before **Disapproval of Buyer's Credit Information Deadline (§ 3)**,

225  this Contract shall terminate.

**5.4.   Existing Loan Review.** If an existing loan is not to be released at Closing, Seller shall deliver copies

227  of the loan documents (including note, deed of trust, and any modifications) to Buyer by **Existing Loan**

228  **Documents Deadline (§ 3)**. For the benefit of Buyer, this Contract is conditional upon Buyer's review and

229  approval of the provisions of such loan documents, in Buyer's sole subjective discretion. If written notice

---



231 ~~to terminate based on Buyer's objection to such loan documents is not received by Seller by **Existing Loan**~~
232 ~~**Documents Objection Deadline (§ 3)**, Buyer accepts the terms and conditions of the documents. If the~~
233 ~~lender's approval of a transfer of the Property is required, this Contract is conditional upon Buyer's~~
234 ~~obtaining such approval without change in the terms of such loan, except as set forth in § 4.6. If lender's~~
235 ~~approval is not obtained by **Loan Transfer Approval Deadline (§ 3)**, this Contract shall terminate on such~~
236 ~~deadline. If Seller is to be released from liability under such existing loan and Buyer does not obtain such~~
237 ~~compliance as set forth in § 4.6, this Contract may be terminated at Seller's option.~~

237 **6.   APPRAISAL PROVISIONS.**

238    **6.1.   Property Approval.** If the lender imposes any requirements or repairs (Requirements) to be made to the
239 Property (e.g., roof repair, repainting), beyond those matters already agreed to by Seller in this Contract, Seller may
240 terminate this Contract (notwithstanding § 10 of this Contract) by delivering written notice to terminate to Buyer on or
241 before three days following Seller's receipt of the Requirements. Seller's right to terminate in this § 6.1 shall not apply if
242 on or before any termination by Seller pursuant to this § 6.1: (1) the parties enter into a written agreement regarding the
243 Requirements; or (2) the Requirements are completed by Seller; or (3) the satisfaction of the Requirements is waived in
244 writing by Buyer.

245    **6.2.   Appraisal Condition.**

246      ☐   **6.2.1.   Not Applicable.** This § 6.2 shall not apply.

247      ☑   **6.2.2.   Conventional/Other.** Buyer shall have the sole option and election to terminate this Contract if the
248 Purchase Price exceeds the Property's valuation determined by an appraiser engaged by
249 **Buyer's Lender** _____ . The appraisal shall be received by Buyer or Buyer's
250 lender on or before **Appraisal Deadline (§ 3)**. This Contract shall terminate by Buyer delivering to Seller
251 written notice of termination and either a copy of such appraisal or written notice from lender that confirms the
252 Property's valuation is less than the Purchase Price, received by Seller on or before **Appraisal Objection**
253 **Deadline (§ 3)**. If Seller does not receive such written notice of termination on or before **Appraisal Objection**
254 **Deadline (§ 3)**, Buyer waives any right to terminate under this section.

255    **6.3.   Cost of Appraisal.** Cost of any appraisal to be obtained after the date of this Contract shall be timely paid by
256 ☑ **Buyer** ☐ **Seller.**

257 **7.   EVIDENCE OF TITLE, SURVEY AND CIC DOCUMNETS.**

258    **7.1.   Evidence of Title.** On or before **Title Deadline (§ 3)**, Seller shall cause to be furnished to Buyer, at Seller's
259 expense, a current commitment for owner's title insurance policy (Title Commitment) in an amount equal to the
260 Purchase Price, or if this box is checked, ☐ **An Abstract** of title certified to a current date. If title insurance is
261 furnished, Seller shall also deliver to Buyer copies of any abstracts of title covering all or any portion of the Property
262 (Abstract) in Seller's possession. At Seller's expense, Seller shall cause the title insurance policy to be issued and
263 delivered to Buyer as soon as practicable at or after Closing. The title insurance commitment ☑ **Shall** ☐ **Shall Not**
264 commit to delete or insure over the standard exceptions which relate to: (1) parties in possession, (2) unrecorded
265 easements, (3) survey matters, (4) any unrecorded mechanics' liens, (5) gap period (effective date of commitment to date
266 deed is recorded), and (6) unpaid taxes, assessments and unredeemed tax sales prior to the year of Closing. Any
267 additional premium expense to obtain this additional coverage shall be paid by ☐ **Buyer** ☑ **Seller.**

268    **Note:** The title insurance company may not agree to delete or insure over any or all of the standard exceptions. Buyer
269 shall have the right to review the Title Commitment, its provisions and Title Documents (defined in § 7.2), and if not
270 satisfactory to Buyer, Buyer may exercise Buyer's rights pursuant to § 8.1.

271    **7.2.   Copies of Exceptions.** On or before **Title Deadline (§ 3)**, Seller, at Seller's expense, shall furnish to
272 Buyer and **Buyer's Broker & Jonathan Melvin, ESQ** _____ , (1) copies of any plats,

273 declarations, covenants, conditions and restrictions burdening the Property, and (2) if a Title Commitment
274 is required to be furnished, and if this box is checked ☑ **Copies of any Other Documents** (or, if illegible,
275 summaries of such documents) listed in the schedule of exceptions (Exceptions). Even if the box is not
276 checked, Seller shall have the obligation to furnish these documents pursuant to this section if requested



277 by Buyer any time on or before **Exceptions Request Deadline** (§ 3). This requirement shall pertain only to
278 documents as shown of record in the office of the clerk and recorder in the county where the Property is
279 located. The abstract or Title Commitment, together with any copies or summaries of such documents
280 furnished pursuant to this section, constitute the title documents (collectively, Title Documents).

281 **7.3.    Survey.** On or before **Survey Deadline** (§ 3), ☐ Seller ☑ Buyer shall order or provide, and cause Buyer (and
282 the issuer of the Title Commitment or the provider of the opinion of title if an abstract) to receive, a current
283 ☐       Improvement     Survey     Plat     ☐     Improvement     Location     Certificate
284 ☑  **See Additional Provisions** _____ (the description checked is known as Survey). An
285 amount not to exceed $ _____ for Survey shall be paid by ☑ Buyer ☐ Seller. If the cost exceeds
286 this amount, ☑ Buyer ☐ Seller shall pay the excess on or before Closing. Buyer shall not be obligated to pay the
287 excess unless Buyer is informed of the cost and delivers to Seller, before Survey is ordered, Buyer's written agreement to
288 pay the required amount to be paid by Buyer.

289 **7.4.    Common Interest Community Documents.** The term CIC Documents consists of all owners' association
290 (Association) declarations, bylaws, operating agreement, rules and regulations, party wall agreements, minutes of most
291 recent annual owners' meeting and minutes of any directors' or managers' meetings during the 6-month period
292 immediately preceding the date of this Contract, if any (Governing Documents), most recent financial documents
293 consisting of (1) annual balance sheet, (2) annual income and expenditures statement, and (3) annual budget (Financial
294 Documents), if any (collectively CIC Documents).

295 ☐    **7.4.1.    Not Applicable.** This § 7.4 shall not apply.

296      **7.4.2.    Common Interest Community Disclosure. THE PROPERTY IS LOCATED WITHIN A**
297      **COMMON INTEREST COMMUNITY AND IS SUBJECT TO THE DECLARATION FOR SUCH**
298      **COMMUNITY. THE OWNER OF THE PROPERTY WILL BE REQUIRED TO BE A MEMBER OF**
299      **THE OWNER'S ASSOCIATION FOR THE COMMUNITY AND WILL BE SUBJECT TO THE**
300      **BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION. THE DECLARATION,**
301      **BYLAWS, AND RULES AND REGULATIONS WILL IMPOSE FINANCIAL OBLIGATIONS UPON**
302      **THE OWNER OF THE PROPERTY, INCLUDING AN OBLIGATION TO PAY ASSESSMENTS OF**
303      **THE ASSOCIATION. IF THE OWNER DOES NOT PAY THESE ASSESSMENTS, THE**
304      **ASSOCIATION COULD PLACE A LIEN ON THE PROPERTY AND POSSIBLY SELL IT TO PAY**
305      **THE DEBT. THE DECLARATION, BYLAWS, AND RULES AND REGULATIONS OF THE**
306      **COMMUNITY MAY PROHIBIT THE OWNER FROM MAKING CHANGES TO THE PROPERTY**
307      **WITHOUT AN ARCHITECTURAL REVIEW BY THE ASSOCIATION (OR A COMMITTEE OF THE**
308      **ASSOCIATION) AND THE APPROVAL OF THE ASSOCIATION. PURCHASERS OF PROPERTY**
309      **WITHIN THE COMMON INTEREST COMMUNITY SHOULD INVESTIGATE THE FINANCIAL**
310      **OBLIGATIONS OF MEMBERS OF THE ASSOCIATION. PURCHASERS SHOULD CAREFULLY**
311      **READ THE DECLARATION FOR THE COMMUNITY AND THE BYLAWS AND RULES AND**
312      **REGULATIONS OF THE ASSOCIATION.**

313 ☑    **7.4.3.    Not Conditional on Review.** Buyer acknowledges that Buyer has received a copy of the CIC
314      Documents. Buyer has reviewed them, agrees to accept the benefits, obligations and restrictions that they impose
315      upon the Property and its owners and waives any right to terminate this Contract due to such documents,
316      notwithstanding the provisions of § 8.5.

317      **7.4.4.    CIC Documents to Buyer.**

318 ☐        **7.4.4.1.    Seller to Provide CIC Documents.** Seller shall cause the CIC Documents to be provided
319          to Buyer, at Seller's expense, on or before **Document Deadline** (§ 3).

320 ☐        **7.4.4.2.    Seller Authorizes Association.** Seller authorizes the Association to provide the CIC
321          Documents to Buyer, at Seller's expense.

322          **7.4.4.3.    Seller's Obligation.** Seller's obligation to provide the CIC Documents shall be fulfilled
323          upon Buyer's receipt of the CIC Documents, regardless of who provides such documents.

324      **7.4.5.    Conditional on Buyer's Review.** If the box in either § 7.4.4.1 or § 7.4.4.2 is checked, the
325      provisions of this § 7.4.5 shall apply. In the event of any unsatisfactory provision in any of the CIC



326    Documents, in Buyer's sole subjective discretion, and written notice to terminate by Buyer, or on
327    behalf of Buyer, is delivered to Seller on or before **CIC Documents Objection Deadline (§ 3)**, this
328    Contract shall terminate. If Seller does not receive Buyer's written notice to terminate on or before
329    **CIC Documents Objection Deadline (§ 3)**, Buyer accepts the CIC Documents and waives the right
330    to terminate for that reason.

331    Should Buyer receive the CIC Documents after **CIC Documents Deadline (§ 3)**, Buyer shall have the right, at
332    Buyer's option, to terminate this Contract by written notice to terminate delivered to Seller on or before ten days
333    after Buyer's receipt of the CIC Documents. If Buyer does not receive the CIC Documents, or if such written
334    notice to terminate would otherwise be required to be delivered after Closing Date (§ 3), Buyer's written notice
335    to terminate shall be received by Seller on or before three days prior to **Closing Date (§ 3)**. If Seller does not
336    receive Buyer's written notice to terminate within such time, Buyer accepts the provisions of the CIC
337    Documents, and Buyer's right to terminate this Contract pursuant to this section is waived, notwithstanding the
338    provisions of § 8.5.
339   Note: If no box in this § 7.4 is checked, the provisions of § 7.4.4.1 shall apply.

340  **8.**   **TITLE AND SURVEY REVIEW.**

341    **8.1.**  **Title Review.** Buyer shall have the right to review the Title Documents. Buyer shall provide written notice to
342    terminate based on unmerchantability of title, unsatisfactory form or content of Title Commitment, or, notwithstanding
343    § 13, of any other unsatisfactory title condition, in Buyer's sole and subjective discretion, shown by the Title Documents
344    (Notice of Title Objection). Such Notice of Title Objection shall be delivered by or on behalf of Buyer and received by
345    Seller on or before **Title Objection Deadline (§ 3)**, provided such Title Documents are received by Buyer in a timely
346    manner. If there is an endorsement to the Title Commitment that adds a new Exception to title, a copy of the new
347    Exception to title and the modified Title Commitment shall be delivered to Buyer. Provided however, Buyer shall have
348    five days to deliver the Notice of Title Objection after receipt by Buyer of the following documents: (1) any required
349    Title Document not timely received by Buyer, (2) any change to the Title Documents, or (3) endorsement to the Title
350    Commitment. If Seller does not receive Buyer's Notice of Title Objection by the applicable deadline specified above,
351    Buyer accepts the condition of title as disclosed by the Title Documents as satisfactory.

352    **8.2.**  **Matters Not Shown by the Public Records.** Seller shall deliver to Buyer, on or before **Off-Record Matters**
353    **Deadline (§ 3)** true copies of all leases and surveys in Seller's possession pertaining to the Property and shall disclose to
354    Buyer all easements, liens (including, without limitation, governmental improvements approved, but not yet installed) or
355    other title matters (including, without limitation, rights of first refusal and options) not shown by the public records of
356    which Seller has actual knowledge. Buyer shall have the right to inspect the Property to investigate if any third party has
357    any right in the Property not shown by the public records (such as an unrecorded easement, unrecorded lease, boundary
358    line discrepancy or water rights). Written notice to terminate based on any unsatisfactory condition (whether disclosed
359    by Seller or revealed by such inspection, notwithstanding § 13), in Buyer's sole subjective discretion, by or on behalf of
360    Buyer shall be delivered to Seller on or before **Off-Record Matters Objection Deadline (§ 3)**. If Seller does not receive
361    Buyer's written notice to terminate on or before **Off-Record Matters Objection Deadline (§ 3)**, Buyer accepts title
362    subject to such rights, if any, of third parties of which Buyer has actual knowledge.

363    **8.3.**  **Survey Review.**

364    ☐   **8.3.1.**   **Not Applicable.** This § 8.3 shall not apply.

365    ☑   **8.3.2.**   **Conditional on Survey.** If the box in this § 8.3.2 is checked, Buyer shall have the right to review the
366    Survey. If written notice to terminate by or on behalf of Buyer based on any unsatisfactory condition, in Buyer's
367    sole subjective discretion, shown by the Survey, notwithstanding § 8.2 or § 13, is received by Seller on or before
368    **Survey Objection Deadline (§ 3)**, this Contract shall terminate. If Seller does not receive Buyer's written notice
369    to terminate by **Survey Objection Deadline (§ 3)**, Buyer accepts the Survey as satisfactory.

370    **8.4.**  **Special Taxing Districts. SPECIAL TAXING DISTRICTS MAY BE SUBJECT TO GENERAL**
371    **OBLIGATION INDEBTEDNESS THAT IS PAID BY REVENUES PRODUCED FROM ANNUAL TAX**
372    **LEVIES ON THE TAXABLE PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN SUCH**
373    **DISTRICTS MAY BE PLACED AT RISK FOR INCREASED MILL LEVIES AND TAX TO SUPPORT**



374 THE SERVICING OF SUCH DEBT WHERE CIRCUMSTANCES ARISE RESULTING IN THE INABILITY
375 OF SUCH A DISTRICT TO DISCHARGE SUCH INDEBTEDNESS WITHOUT SUCH AN INCREASE IN
376 MILL LEVIES. BUYERS SHOULD INVESTIGATE THE SPECIAL TAXING DISTRICTS IN WHICH THE
377 PROPERTY IS LOCATED BY CONTACTING THE COUNTY TREASURER, BY REVIEWING THE
378 CERTIFICATE OF TAXES DUE FOR THE PROPERTY, AND BY OBTAINING FURTHER
379 INFORMATION FROM THE BOARD OF COUNTY COMMISSIONERS, THE COUNTY CLERK AND
380 RECORDER, OR THE COUNTY ASSESSOR.

381 In the event the Property is located within a special taxing district and Buyer desires to terminate this Contract as the
382 effect of the special taxing district is unsatisfactory, in Buyer's sole subjective discretion, if written notice to terminate,
383 by or on behalf of Buyer, is received by Seller on or before Off-Record Matters Objection Deadline (§ 3), this
384 Contract shall terminate. If Seller does not receive Buyer's written notice to terminate on or before Off-Record Matters
385 Objection Deadline (§ 3), Buyer accepts the effect of the Property's inclusion in such special taxing district and waives
386 the right to terminate for that reason.

387 **8.5.** **Right to Object, Cure.** Buyer's right to object shall include, but not be limited to, those matters set forth in §§ 8
388 and 13. If Seller receives Buyer's written notice to terminate or notice of unmerchantability of title or any other
389 unsatisfactory title condition or commitment terms as provided in §§ 8.1 and 8.2, Seller shall use reasonable efforts to
390 correct said items and bear any nominal expense to correct the same prior to Closing. If such unsatisfactory title
391 condition is not corrected to Buyer's satisfaction, in Buyer's sole subjective discretion, on or before Closing, this
392 Contract shall terminate; provided, however, Buyer may, by written notice received by Seller on or before Closing,
393 waive objection to such items.

394 **8.6.** **Right of First Refusal or Contract Approval.** If there is a right of first refusal on the Property, or a right to
395 approve this Contract, Seller shall promptly submit this Contract according to the terms and conditions of such right. If
396 the holder of the right of first refusal exercises such right or the holder of a right to approve disapproves this Contract,
397 this Contract shall terminate. If the right of first refusal is waived explicitly or expires, or the Contract is approved, this
398 Contract shall remain in full force and effect. Seller shall promptly notify Buyer in writing of the foregoing. If expiration
399 or waiver of the right of first refusal or Contract approval has not occurred on or before Right of First Refusal
400 Deadline (§ 3), this Contract shall terminate.

401 **8.7.** **Title Advisory.** The Title Documents affect the title, ownership and use of the Property and should be reviewed
402 carefully. Additionally, other matters not reflected in the Title Documents may affect the title, ownership and use of the
403 Property, including without limitation boundary lines and encroachments, area, zoning, unrecorded easements and
404 claims of easements, leases and other unrecorded agreements, and various laws and governmental regulations
405 concerning land use, development and environmental matters. **The surface estate may be owned separately from the**
406 **underlying mineral estate, and transfer of the surface estate does not necessarily include transfer of the mineral**
407 **rights or water rights. Third parties may hold interests in oil, gas, other minerals, geothermal energy or water on**
408 **or under the Property, which interests may give them rights to enter and use the Property.** Such matters may be
409 excluded from or not covered by the title insurance policy. Buyer is advised to timely consult legal counsel with respect
410 to all such matters as there are strict time limits provided in this Contract [e.g., **Title Objection Deadline** (§ 3) and **Off-**
411 **Record Matters Objection Deadline** (§ 3)].

412 **9.** **GOOD FAITH.** Buyer and Seller acknowledge that each party has an obligation to act in good faith, including but not
413 limited to exercising the rights and obligations set forth in the provisions of **Financing Conditions and Obligations** (§ 5),
414 **Title and Survey Review** (§ 8) and **Property Disclosure, Inspection, Indemnity, Insurability and Due Diligence** (§ 10).

| DISCLOSURE, INSPECTION AND DUE DILIGENCE |
| --- |

415 **10.** **PROPERTY DISCLOSURE, INSPECTION, INDEMNITY, INSURABILITY AND DUE DILIGENCE.**

416 **10.1.** **Seller's Property Disclosure Deadline.** On or before **Seller's Property Disclosure Deadline** (§ 3), Seller
417 agrees to deliver to Buyer the most current version of the applicable Colorado Real Estate Commission's Seller's Property
418 Disclosure form completed by Seller to Seller's actual knowledge, current as of the date of this Contract.

419 **10.2.** **Inspection Objection Deadline.** Unless otherwise provided in this Contract, Buyer acknowledges
420 that Seller is conveying the Property to Buyer in an "as is" condition, "where is" and "with all faults". Seller



421 shall disclose to Buyer, in writing, any latent defects actually known by Seller. Buyer, acting in good faith,
422 shall have the right to have inspections (by a third party, personally or both) of the Property and Inclusions
423 (Inspection), at Buyer's expense. If (1) the physical condition of the Property, (2) the physical condition of
424 the Inclusions, (3) service to the Property (including utilities and communication services), systems and
425 components of the Property, e.g. heating and plumbing, (4) any proposed or existing transportation project,
426 road, street or highway, or (5) any other activity, odor or noise (whether on or off the Property) and its effect
427 or expected effect on the Property or its occupants is unsatisfactory in Buyer's sole subjective discretion,
428 Buyer shall, on or before **Inspection Objection Deadline** (§ 3):

429         **10.2.1.**   **Notice to Terminate.** Notify Seller in writing that this Contract is terminated; or

430         **10.2.2.**   **Notice to Correct.** Deliver to Seller a written description of any unsatisfactory physical condition
431         which Buyer requires Seller to correct (Notice to Correct).

432 If written notice is not received by Seller on or before **Inspection Objection Deadline** (§ 3), the physical condition of the
433 Property and Inclusions shall be deemed to be satisfactory to Buyer.

434 **10.3.**     **Inspection Resolution Deadline.** If a Notice to Correct is received by Seller and if Buyer and Seller have not
435 agreed in writing to a settlement thereof on or before **Inspection Resolution Deadline** (§ 3), this Contract shall terminate
436 on **Inspection Resolution Deadline** (§ 3), unless Seller receives Buyer's written withdrawal of the Notice to Correct
437 before such termination, i.e., on or before expiration of **Inspection Resolution Deadline** (§ 3).

438 **10.4.**     **Damage, Liens and Indemnity.** Buyer, except as otherwise provided in this Contract, is responsible for
439 payment for all inspections, tests, surveys, engineering reports, or any other work performed at Buyer's request (Work)
440 and shall pay for any damage that occurs to the Property and Inclusions as a result of such Work. Buyer shall not permit
441 claims or liens of any kind against the Property for Work performed on the Property at Buyer's request. Buyer agrees to
442 indemnify, protect and hold Seller harmless from and against any liability, damage, cost or expense incurred by Seller
443 and caused by any such Work, claim, or lien. This indemnity includes Seller's right to recover all costs and expenses
444 incurred by Seller to defend against any such liability, damage, cost or expense, or to enforce this section, including
445 Seller's reasonable attorney fees, legal fees and expenses. The provisions of this section shall survive the termination of
446 this Contract.

448 ~~**10.5.**     **Insurability.** This Contract is conditional upon Buyer's satisfaction, in Buyer's sole subjective discretion, with
the availability, terms and conditions of and premium for property insurance. This Contract shall terminate upon Seller's~~
449 ~~receipt, on or before **Property Insurance Objection Deadline** (§ 3), of Buyer's written notice to terminate based on such~~
450 ~~insurance being unsatisfactory to Buyer. If Seller does not receive Buyer's written notice to terminate on or before~~
451 ~~**Property Insurance Objection Deadline** (§ 3), Buyer shall have waived any right to terminate under this provision.~~

453 ~~**10.6.**     **Due Diligence - Physical Inspection.** Buyer's Inspection of the Property under § 10.2 shall also~~
454 ~~include, without limitation, at Buyer's option, an inspection of the roof, walls, structural integrity of the~~
455 ~~Property, an inspection of the electrical, plumbing, HVAC and other mechanical systems of the Property. If~~
456 ~~the condition of the Property or Inclusions are not satisfactory to Buyer, in Buyer's sole subjective~~
457 ~~discretion, Buyer shall, on or before **Inspection Objection Deadline** (§ 3), provide the applicable written~~
458 ~~notice pursuant to § 10.2. Buyer shall also have the right to obtain environmental inspections of the~~
459 ~~Property including Phase I and Phase II Environmental Site Assessments, as applicable.~~ ☐ ~~Seller~~ ☐
460 ~~Buyer shall order or provide~~ ☐ ~~**Phase I Environmental Site Assessment,**~~ ☐ ~~**Phase II Environmental Site**~~
461 ~~**Assessment** (compliant with ASTM E1527-05 standard practices for Environmental Site Assessments)~~
462 ~~and/or~~ ☐ ~~_____~~, ~~at the expense of~~ ☐ ~~Seller~~ ☐
463 ~~Buyer (Environmental Inspection). In addition, Buyer may also conduct an evaluation whether the Property~~
464 ~~complies with the *Americans with Disabilities Act* (ADA Evaluation). All such inspections and evaluations~~
465 ~~shall be conducted at such times as are mutually agreeable to minimize the interruption of Seller's and any~~
466 ~~Seller's tenants' business uses of the Property, if any. If Buyer is not satisfied with the results of~~
467 ~~Environmental Inspection, in Buyer's sole subjective discretion, and written notice to terminate is received~~
468 ~~by Seller on or before **Environmental Inspection Objection Deadline** (§ 3), this Contract shall terminate. If~~





469    Buyer is not satisfied with the results of ADA Evaluation, in Buyer's sole subjective discretion, and written
470    notice to terminate is received by Seller on or before ADA Evaluation Objection Deadline (§ 3), this Contract
471    shall terminate. If Buyer's Phase I Environmental Site Assessment recommends a Phase II Environmental Site
472    Assessment, the Environmental Inspection Objection Deadline (§ 3) shall be extended by _____
473    days and if such extended Environmental Inspection Objection Deadline (§ 3) extends beyond the Closing
474    Date (§ 3), the Closing Date (§ 3) shall be extended a like period of time.

475    10.7.    Due Diligence Documents. Seller agrees to deliver copies of the following documents and information (Due
476    Diligence Documents) to Buyer on or before Due Diligence Documents Delivery Deadline (§ 3) to the extent such Due
477    Diligence Documents exist and are in Seller's possession:

478    10.7.1.    Copies of all contracts relating to the operation, maintenance and management of the Property;

479    10.7.2.    Copies of the Property tax bills for the last _____ years;

480    10.7.3.    As-built construction plans to the Property and the tenant improvements, including architectural,
481    electrical, mechanical and structural systems; engineering reports; and permanent Certificates of Occupancy, to
482    the extent now available;

483    10.7.4.    A list of all Inclusions to be conveyed to Buyer;

484    10.7.5.    Operating statements for the past _____ years;

485    10.7.6.    A rent roll accurate and correct to the date of this Contract;

486    10.7.7.    True and correct copies of all current leases and any amendments on the Property, or other
487    occupancy agreements (Leases) if not delivered earlier under § 8.2;

488    10.7.8.    A schedule of any tenant improvement work Seller is obligated to complete but has not yet
489    completed and capital improvement work either scheduled or in process on the date of this Contract;

490    10.7.9.    Copies of all insurance policies pertaining to the Property and copies of any claims which have been
491    made for the past _____ years;

492    10.7.10.    Soils reports, Surveys and engineering reports or data pertaining to the Property (if not delivered
493    earlier under § 8.2);

494    10.7.11.    Any and all existing documentation and reports regarding Phase I and II environmental reports,
495    letters, test results, advisories, and similar documents respective to the existence or nonexistence of asbestos,
496    PCB transformers, or other toxic hazardous or contaminated substances, and/or underground storage tanks
497    and/or radon gas. If no reports are in Seller's possession or known to Seller, Seller shall warrant that no such
498    reports are in Seller's possession or known to Seller;

499    10.7.12.    Copies of any Americans with Disabilities Act reports, studies or surveys concerning the
500    compliance of the Property with said Act;

501    10.7.13.    All permits, licenses and other building or use authorizations issued by any governmental authority
502    with jurisdiction over the Property and written notice of any violation of any such permits, licenses or use
503    authorizations, if any; and

504    10.7.14.    Other Documents:

505    10.8.    Due Diligence Documents Conditions. This Contract is subject to and expressly conditional upon Buyer, in
506    Buyer's sole subjective discretion, reviewing and approving the Due Diligence Documents, Survey, Leases, zoning and
507    any use restrictions imposed by any governmental agency with jurisdiction over the Property (Zoning). Buyer shall also
508    have the unilateral right to waive any condition herein.

509    10.8.1.    Due Diligence Documents. If Buyer is not satisfied with the results of Buyer's review of the Due
510    Diligence Documents and written notice to terminate is received by Seller on or before Due Diligence
511    Documents Objection Deadline (§ 3), this Contract shall terminate;

512    10.8.2.    Survey. If any unsatisfactory condition is shown by the Survey and written notice to terminate is
513    received by Seller on or before Survey Objection Deadline (§ 3), this Contract shall terminate;

515    10.8.3.    Leases. If the Leases are not satisfactory to Buyer, Seller shall receive written notice to

516 ~~terminate on or before Off-Record Matters Objection Deadline (§ 3), unless the Leases are not~~
517 ~~timely delivered under § 8.2, then Seller shall receive written notice to terminate on or before Due~~
518 ~~Diligence Documents Objection Deadline (§ 3). If Seller timely receives written notice to terminate,~~
~~this Contract shall terminate.~~

~~10.8.4.    Zoning. If Buyer is not satisfied with the results of Buyer's review of the Zoning and written notice~~
520 ~~to terminate is received by Seller on or before Due Diligence Documents Objection Deadline (§ 3), this~~
521 ~~Contract shall terminate. If Buyer's written notice to terminate for any of the conditions set forth above is not~~
522 ~~timely received by Seller, then such condition shall be deemed to be satisfactory to Buyer.~~

~~10.9.    Existing Leases; Modification of Existing Leases; New Leases. Seller states that none of the Leases to be~~
524 ~~assigned to the Buyer at the time of Closing contain any rent concessions, rent reductions or rent abatements except as~~
525 ~~disclosed in the Lease or other writing received by Buyer. Seller shall not amend, alter, modify, extend or cancel any of~~
526 ~~the Leases nor shall Seller enter into any new leases affecting the Property without the prior written consent of Buyer,~~
527 ~~which consent shall not be unreasonably withheld or delayed.~~

528 **11.    TENANT ESTOPPEL STATEMENTS.**
529 ☑ **11.1.    Not Applicable. This § 11 shall not apply.**
530 **11.2.    Applicable. This § 11.2 shall apply unless the box in § 11.1 is checked.** As to all occupants or tenants at the
531 Property, Seller shall obtain and deliver to Buyer on or before **Tenant Estoppel Statements Deadline (§ 3)**, statements
532 in a form and substance reasonably acceptable to Buyer (Estoppel), from each occupant or tenant attached to a copy of
533 such occupant's or tenant's lease and any amendments (Lease) stating:
534 **11.2.1.**    The commencement date of the Lease and scheduled termination date of the Lease;
535 **11.2.2.**    That said Lease is in full force and effect and that there have been no subsequent modifications or
536 amendments;
537 **11.2.3.**    The amount of any advance rentals paid, rent concessions given, and deposits paid to Seller;
538 **11.2.4.**    The amount of monthly (or other applicable period) rental paid to Seller;
539 **11.2.5.**    That there is no default under the terms of said Lease by landlord or occupant; and
540 **11.2.6.**    That the Lease to which the Estoppel is attached is a true, correct and complete copy of the Lease
541 demising the premises it describes.
542 **11.3.    Tenant Estoppel Statements Delivery/Objection.** If Seller shall fail to deliver the Estoppels on or before
543 **Tenant Estoppel Statements Deadline (§ 3)** or if Buyer is not satisfied with the form or substance of the Estoppels and
544 written notice to terminate is received by Seller on or before **Tenant Estoppel Statements Objection Deadline (§ 3)**,
545 this Contract shall terminate. Buyer's approval or disapproval of the Estoppel shall be at Buyer's sole subjective
546 discretion. Buyer shall also have the unilateral right to waive any unsatisfactory Estoppel. If Buyer's written notice to
547 terminate is not received by Seller on or before **Tenant Estoppel Statements Objection Deadline (§ 3)**, the Estoppels
548 shall be deemed to be satisfactory to Buyer.

549 | **CLOSING PROVISIONS** |

550 **12.    CLOSING DOCUMENTS, INSTRUCTIONS AND CLOSING.**
551 **12.1.    Closing Documents and Closing Information.** Seller and Buyer shall cooperate with the Closing Company to
552 enable the Closing Company to deliver all documents required for Closing to Buyer and Seller and their designees by the
553 **Closing Documents Delivery Deadline (§ 3)**. If Buyer is obtaining a new loan to purchase the Property, Buyer
554 acknowledges Buyer's lender shall be required to provide the Closing Company in a timely manner all required loan
555 documents and financial information concerning Buyer's new loan. Buyer and Seller will furnish any additional
556 information and documents required by Closing Company that will be necessary to complete this transaction. Buyer and
557 Seller shall sign and complete all customary or reasonably required documents at or before Closing.
558 **12.2.    Closing Instructions.** Buyer and Seller agree to execute the Colorado Real Estate Commission's Closing
559 Instructions. Such Closing Instructions ☐ Are ☑ Are Not executed with this Contract. Upon mutual execution,
560 ☑ Seller ☐ Buyer shall deliver such Closing Instructions to the Closing Company.
561 **12.3.    Closing.** Delivery of deed from Seller to Buyer shall be at closing (Closing). Closing shall be on the

562 date specified as the **Closing Date** (§ 3) or by mutual agreement at an earlier date. The hour and place of
563 Closing shall be as designated by **Buyer and Seller** .

564 **12.4.    Disclosure of Settlement Costs.** Buyer and Seller acknowledge that costs, quality, and extent of service vary
565 between different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

566 **13.  TRANSFER OF TITLE.** Subject to tender or payment at Closing as required herein and compliance by Buyer with the
567 other   terms   and   provisions   hereof,   Seller   shall   execute   and   deliver   a   good   and   sufficient
568 **Special Warranty** deed to
569 Buyer, at Closing, conveying the Property free and clear of all taxes except the general taxes for the year of Closing. Except as
570 provided herein, title shall be conveyed free and clear of all liens, including any governmental liens for special improvements
571 installed as of the date of Buyer's signature hereon, whether assessed or not. Title shall be conveyed subject to:

572 **13.1.**    Those specific Exceptions described by reference to recorded documents as reflected in the Title Documents
573 accepted by Buyer in accordance with **Title Review** (§ 8.1),

574 **13.2.**    Distribution utility easements,

575 **13.3.**    Those specifically described rights of third parties not shown by the public records of which Buyer has actual
576 knowledge and which were accepted by Buyer in accordance with **Matters Not Shown by the Public Records** (§ 8.2)
577 and **Survey Review** (§ 8.3),

578 **13.4.**    Inclusion of the Property within any special taxing district, and

579 **13.5.**    Other _____ .

580 **14.  PAYMENT OF ENCUMBRANCES.** Any encumbrance required to be paid shall be paid at or before Closing from the
581 proceeds of this transaction or from any other source.

582 **15.  CLOSING COSTS, CLOSING FEE, CIC FEES AND TAXES.**

583 **15.1.**    **Closing Costs.** Buyer and Seller shall pay, in Good Funds, their respective closing costs and all other items
584 required to be paid at Closing, except as otherwise provided herein.

585 **15.2.**    **Closing Services Fee.** The fee for real estate Closing services shall be paid at Closing by ☐ **Buyer** ☐ **Seller**
586 ☑ **One-Half by Buyer and One-Half by Seller** ☐ **Other** _____ .

587 **15.3.**    **Status Letter and Transfer Fees.** Any fees incident to the issuance of Association's statement of assessments
588 (Status Letter) shall be paid by ☐ **Buyer** ☑ **Seller** ☐ **One-Half by Buyer and One-Half by Seller.** Any transfer fees
589 assessed by the Association (Association's Transfer Fee) shall be paid by ☐ **Buyer** ☑ **Seller** ☐ **One-Half by Buyer**
590 **and One-Half by Seller.**

592 ~~**15.4.    Local Transfer Tax.** ☐ The local transfer tax of _____ % of the Purchase Price shall be paid at Closing by ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.~~

594 ~~**15.5.    Sales and Use Tax.** Any sales and use tax that may accrue because of this transaction shall be paid when due by ☐ Buyer ☐ Seller ☐ One-Half by Buyer and One-Half by Seller.~~

595 **16.  PRORATIONS.** The following shall be prorated to **Closing Date** (§ 3), except as otherwise provided:

596 **16.1.**    **Taxes.** Personal property taxes, if any, and general real estate taxes for the year of Closing, based on ☐ **Taxes**
597 **for the Calendar Year Immediately Preceding Closing** ☑ **Most Recent Mill Levy and Most Recent Assessed**
598 **Valuation,** or ☐ **Other** _____ .

599 **16.2.**    **Rents.** Rents based on ☑ **Rents Actually Received** ☐ **Accrued.** At Closing, Seller shall transfer or credit to
600 Buyer the security deposits for all leases assigned, or any remainder after lawful deductions, and notify all tenants in
601 writing of such transfer and of the transferee's name and address. Seller shall assign to Buyer all leases in effect at
602 Closing and Buyer shall assume such leases.

603 **16.3.**    **Association Assessments.** Current regular Association assessments and Association dues
604 (Association Assessments) paid in advance shall be credited to Seller at Closing. Cash reserves held out of
605 the regular Association Assessments for deferred maintenance by the Association shall not be credited to
606 Seller except as may be otherwise provided by the Governing Documents. Buyer acknowledges that Buyer



607  may be obligated to pay the Association, at Closing, an amount for reserves or working capital. Any special
608  assessment by the Association for improvements that have been installed as of the date of Buyer's
609  signature hereon shall be the obligation of Seller. Any other special assessment assessed prior to Closing
610  Date (§ 3) by the Association shall be the obligation of ☐ Buyer ☑ Seller. Seller represents that the
611  Association Assessments are currently payable at $ _____ per _____and
612  that there are no unpaid regular or special assessments against the Property except the current regular
613  assessments and

**No Special Assessments - See additional Provisions for HOA amount**

614  Such assessments are subject to change as provided in the Governing Documents. Seller agrees to promptly request the
615  Association to deliver to Buyer before Closing Date (§ 3) a current Status Letter.

616  **16.4.**   **Other Prorations.** Water and sewer charges, interest on continuing loan, and

**Any Required Including final Lease Payment**

617  **16.5.**   **Final Settlement.** Unless otherwise agreed in writing, these prorations shall be final.

618  **17. POSSESSION.** Possession of the Property shall be delivered to Buyer on Possession Date at Possession Time (§ 3),
619  subject to the following leases or tenancies:

**Current Lease held by Buyer**

620  If Seller, after Closing, fails to deliver possession as specified, Seller shall be subject to eviction and shall be additionally
621  liable to Buyer for payment of $ **0.00**_____ per day (or any part of a day notwithstanding § 18.1) from
622  Possession Date and Possession Time (§ 3) until possession is delivered.

623  ┌─────────────────────────────┐
     │   **GENERAL PROVISIONS**   │
     └─────────────────────────────┘

624  **18. DAY; COMPUTATION OF PERIOD OF DAYS, DEADLINE.**

625  **18.1.**   **Day.** As used in this Contract, the term "day" shall mean the entire day ending at 11:59 p.m., United States
626  Mountain Time (Standard or Daylight Savings as applicable).

627  **18.2.**   **Computation of Period of Days, Deadline.** In computing a period of days, when the ending date is not
628  specified, the first day is excluded and the last day is included, e.g., three days after MEC. If any deadline falls on a
629  Saturday, Sunday or federal or Colorado state holiday (Holiday), such deadline ☑ Shall ☐ Shall Not be extended to the
630  next day that is not a Saturday, Sunday or Holiday. Should neither box be checked, the deadline shall not be extended.

631  **19. CAUSES OF LOSS, INSURANCE; CONDITION OF, DAMAGE TO PROPERTY AND INCLUSIONS AND**
632  **WALK-THROUGH.** Except as otherwise provided in this Contract, the Property, Inclusions or both shall be delivered in the
633  condition existing as of the date of this Contract, ordinary wear and tear excepted.

634  **19.1.**   **Causes of Loss, Insurance.** In the event the Property or Inclusions are damaged by fire, other perils or causes of
635  loss prior to Closing in an amount of not more than ten percent of the total Purchase Price, Seller shall be obligated to
636  repair the same before **Closing Date (§ 3)**. In the event such damage is not repaired within said time or if the damage
637  exceeds such sum, this Contract may be terminated at the option of Buyer by delivering to Seller written notice to
638  terminate on or before Closing. Should Buyer elect to carry out this Contract despite such damage, Buyer shall be entitled
639  to a credit at Closing for all insurance proceeds that were received by Seller (but not the Association, if any) resulting
640  from such damage to the Property and Inclusions, plus the amount of any deductible provided for in such insurance
641  policy. Such credit shall not exceed the Purchase Price. In the event Seller has not received such insurance proceeds prior
642  to Closing, then Seller shall assign such proceeds at Closing, plus credit Buyer the amount of any deductible provided for
643  in such insurance policy, but not to exceed the total Purchase Price.

644  **19.2.**   **Damage, Inclusions and Services.** Should any Inclusion or service (including utilities and
645  communication services), systems and components of the Property, e.g., heating or plumbing, fail or be
646  damaged between the date of this Contract and Closing or possession, whichever shall be earlier, then Seller
647  shall be liable for the repair or replacement of such Inclusion, service, system, component or fixture of the
648  Property with a unit of similar size, age and quality, or an equivalent credit, but only to the extent that the

649 maintenance or replacement of such Inclusion, service, system, component or fixture is not the
650 responsibility of the Association, if any, less any insurance proceeds received by Buyer covering such
651 repair or replacement. Seller and Buyer are aware of the existence of pre-owned home warranty programs that
652 may be purchased and may cover the repair or replacement of such Inclusions.

653 **19.3.    Condemnation.** In the event Seller receives actual notice prior to Closing that a pending condemnation action
654 may result in a taking of all or part of the Property or Inclusions, Seller shall promptly notify Buyer, in writing, of such
655 condemnation action. In such event, this Contract may be terminated at the option of Buyer, in Buyer's sole subjective
656 discretion, by Buyer delivering to Seller written notice to terminate on or before Closing. Should Buyer elect to
657 consummate this Contract despite such diminution of value to the Property and Inclusions, Buyer shall be entitled to a
658 credit at Closing for all condemnation proceeds awarded to Seller for the diminution in the value of the Property or
659 Inclusions but such credit shall not include relocation benefits, expenses or exceed the Purchase Price.

660 **19.4.    Walk-Through and Verification of Condition.** Buyer, upon reasonable notice, shall have the right to walk
661 through the Property prior to Closing to verify that the physical condition of the Property and Inclusions complies with
662 this Contract.

663 **20.  RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this document, Buyer and Seller
664 acknowledge that the respective broker has advised that this document has important legal consequences and has
665 recommended the examination of title and consultation with legal and tax or other counsel before signing this Contract.

666 **21. TIME OF ESSENCE, DEFAULT AND REMEDIES.** Time is of the essence hereof. If any note or check received as
667 Earnest Money hereunder or any other payment due hereunder is not paid, honored or tendered when due, or if any obligation
668 hereunder is not performed or waived as herein provided, there shall be the following remedies:

669 **21.1.    If Buyer is in Default:**

670 ☐       **21.1.1.    Specific Performance.** Seller may elect to treat this Contract as canceled, in which case all Earnest
671 Money (whether or not paid by Buyer) shall be paid to Seller and retained by Seller; and Seller may recover
672 such damages as may be proper; or Seller may elect to treat this Contract as being in full force and effect and
673 Seller shall have the right to specific performance or damages, or both.

674 **21.1.2.    Liquidated Damages, Applicable.** This § 21.1.2 shall apply <u>unless the box in § 21.1.1. is</u>
675 <u>checked.</u> All Earnest Money (whether or not paid by Buyer) shall be paid to Seller, and retained by Seller. Both
676 parties shall thereafter be released from all obligations hereunder. It is agreed that the Earnest Money specified
677 in § 4.1 is LIQUIDATED DAMAGES, and not a penalty, which amount the parties agree is fair and reasonable
678 and (except as provided in §§ 10.4, 22, 23 and 24), said payment of Earnest Money shall be SELLER'S SOLE
679 AND ONLY REMEDY for Buyer's failure to perform the obligations of this Contract. Seller expressly waives
680 the remedies of specific performance and additional damages.

681 **21.2.    If Seller is in Default:** Buyer may elect to treat this Contract as canceled, in which case all Earnest Money
682 received hereunder shall be returned and Buyer may recover such damages as may be proper, or Buyer may elect to treat
683 this Contract as being in full force and effect and Buyer shall have the right to specific performance or damages, or both.

684 **22. LEGAL FEES, COST AND EXPENSES.** Anything to the contrary herein notwithstanding, in the event of any
685 arbitration or litigation relating to this Contract, prior to or after **Closing Date** (§ 3), the arbitrator or court shall award to the
686 prevailing party all reasonable costs and expenses, including attorney fees, legal fees and expenses.

687 **23. MEDIATION.** If a dispute arises relating to this Contract, prior to or after Closing, and is not resolved, the parties shall
688 first proceed in good faith to submit the matter to mediation. Mediation is a process in which the parties meet with an impartial
689 person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties
690 to the dispute must agree, in writing, before any settlement is binding. The parties will jointly appoint an acceptable mediator
691 and will share equally in the cost of such mediation. The mediation, unless otherwise agreed, shall terminate in the event the
692 entire dispute is not resolved within thirty days of the date written notice requesting mediation is delivered by one party to the
693 other at the party's last known address. This section shall not alter any date in this Contract, unless otherwise agreed.

694 **24. EARNEST MONEY DISPUTE.** Except as otherwise provided herein, Earnest Money Holder shall release the
695 Earnest Money as directed by written mutual instructions, signed by both Buyer and Seller. In the event of any



696 controversy regarding the Earnest Money (notwithstanding any termination of this Contract), Earnest Money
697 Holder shall not be required to take any action. Earnest Money Holder, at its option and sole subjective
698 discretion, may (1) await any proceeding, (2) interplead all parties and deposit Earnest Money into a court of
699 competent jurisdiction and shall recover court costs and reasonable attorney and legal fees, or (3) provide notice
700 to Buyer and Seller that unless Earnest Money Holder receives a copy of the Summons and Complaint or Claim
701 (between Buyer and Seller), containing the case number of the lawsuit (Lawsuit) within one hundred twenty days
702 of Earnest Money Holder's notice to the parties, Earnest Money Holder shall be authorized to return the Earnest
703 Money to Buyer. In the event Earnest Money Holder does receive a copy of the Lawsuit, and has not interpled
704 the monies at the time of any Order, Earnest Money Holder shall disburse the Earnest Money pursuant to the
705 Order of the Court. The parties reaffirm the obligation of Mediation (§ 23). The provisions of this § 24 apply only
706 if the Earnest Money Holder is one of the Brokerage Firms named in § 32 or § 33.

707 **25. TERMINATION.** In the event this Contract is terminated, all Earnest Money received hereunder shall be returned and
708 the parties shall be relieved of all obligations hereunder, subject to §§ 10.4, 22, 23 and 24.

709 **26. ENTIRE AGREEMENT, MODIFICATION, SURVIVAL.** This Contract, its exhibits and specified addenda,
710 constitute the entire agreement between the parties relating to the subject hereof, and any prior agreements pertaining thereto,
711 whether oral or written, have been merged and integrated into this Contract. No subsequent modification of any of the terms of
712 this Contract shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties. Any
713 obligation in this Contract that, by its terms, is intended to be performed after termination or Closing shall survive the same.

714 **27. NOTICE, DELIVERY, AND CHOICE OF LAW.**

715     **27.1.   Physical Delivery.** All notices must be in writing, except as provided in § 27.2. Any document, including a
716 signed document or notice, delivered to Buyer shall be effective when physically received by Buyer, any signator on
717 behalf of Buyer, any named individual of Buyer, any representative of Buyer, or Brokerage Firm of Broker working with
718 Buyer (except for delivery, after Closing, of the notice requesting mediation described in § 23) and except as provided in
719 § 27.2 below. Any document, including a signed document or notice, delivered to Seller shall be effective when
720 physically received by Seller, any signator on behalf of Seller, any named individual of Seller, any representative of
721 Seller, or Brokerage Firm of Broker working with Seller (except for delivery, after Closing, of the notice requesting
722 mediation described in § 23) and except as provided in § 27.2 below.

723     **27.2.   Electronic Delivery.** As an alternative to physical delivery, any document, including any signed document or
724 written notice may be delivered in electronic form only by the following indicated methods: ☑ **Facsimile** ☑ **Email**
725 ☑ **Internet** ☐ **No Electronic Delivery.** Documents with original signatures shall be provided upon request of any
726 party.

727     **27.3.   Choice of Law.** This Contract and all disputes arising hereunder shall be governed by and construed in
728 accordance with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in
729 Colorado for property located in Colorado.

730 **28. NOTICE OF ACCEPTANCE, COUNTERPARTS.** This proposal shall expire unless accepted in writing, by Buyer
731 and Seller, as evidenced by their signatures below, and the offering party receives notice of such acceptance pursuant to § 27
732 on or before **Acceptance Deadline Date** (§ 3) and **Acceptance Deadline Time** (§ 3). If accepted, this document shall become
733 a contract between Seller and Buyer. A copy of this document may be executed by each party, separately, and when each party
734 has executed a copy thereof, such copies taken together shall be deemed to be a full and complete contract between the parties.

735     | **ADDITIONAL PROVISIONS AND ATTACHMENTS** |
| --- |

736 **29. ADDITIONAL PROVISIONS.** (The following additional provisions have not been approved by the Colorado Real
737 Estate Commission.)

    **See Exhibit A**

738 **30. ATTACHMENTS.** The following are a part of this Contract:

    **1. Exhibit A - Additional Provisions**
    **2. Exhibit B - Approximate Floor Plan or Property**

**3. Exhibit C - Leases**
**4. Exhibit D - Scope of Work (To be completed by Buyer per Exhibit A)**

739 Note: The following disclosure forms are attached but are not a part of this Contract:

740 | SIGNATURES |

741

**Formosa Group, LLC**
Buyer's Signature _Chien S Lee_ _____ Date _10/12/2011_
**By: Chien Sheng Lee**
Address:
**POB 772170 Steamboat Springs, CO 80477**
Phone No: _____ Fax No: _____
Electronic Address: _____

742

743 [NOTE: If this offer is being countered or rejected, do not sign this document. Refer to § 31]

744

**Wescoin, LLLP**
Seller's Signature _Denise Carlsson_ _____ Date _10/13/11_
**By: Steve Peterson and/or Court Appointed Receiver**
Address:
**Steamboat Springs, CO 80487**
Phone No. _____ Fax No. _____
Electronic Address: _____

745 **31. COUNTER; REJECTION.** This offer is ☐ Countered ☐ Rejected.

746 Initials only of party (Buyer or Seller) who countered or rejected offer _____

747 | END OF CONTRACT TO BUY AND SELL REAL ESTATE |

**32. BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.**

(To be completed by Broker working with Buyer)

Broker ☐ Does ☑ Does Not acknowledge receipt of Earnest Money deposit specified in § 4.1 and, while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under § 23. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in§ 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder shall release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money shall be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared. Broker agrees that if Earnest Money Holder is other than the Brokerage Firm identified in § 32 or § 33, Closing Instructions signed by Buyer, Seller, and Earnest Money Holder must be obtained on or before delivery of Earnest Money to Earnest Money Holder.

Broker is working with Buyer as a ☑ Buyer's Agent ☐ Seller's Agent ☐ Transaction-Broker in this transaction.
☐ This is a Change of Status.

Brokerage Firm's compensation or commission is to be paid by ☐ Listing Brokerage Firm ☐ Buyer
☑ Other **Seller's Preceeds - See Exhibit A** _____

Brokerage Firm's Name: **Prudential Steamboat Realty**

Broker's Name: **Michelle Diehl**

*Michelle Diehl*    10|12|11

Broker 's Signature      Date

Address: **601 Market Place Plaza Suite 100**

Phone No.: **970.879.8100**

Fax No.: **970.879.9528**

Electronic Address: **michellediehl@comcast.net**

---

## 33. BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.

(To be completed by Broker working with Seller)

Broker ☐ **Does** ☑ **Does Not** acknowledge receipt of Earnest Money deposit specified in § 4.1 and, while not a party to the Contract, agrees to cooperate upon request with any mediation concluded under § 23. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 24, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder shall release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money shall be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared. Broker agrees that if Earnest Money Holder is other than the Brokerage Firm identified in § 32 or § 33, Closing Instructions signed by Buyer, Seller, and Earnest Money Holder must be obtained on or before delivery of Earnest Money to Earnest Money Holder.

Broker is working with Seller as a ☐ **Seller's Agent** ☐ **Buyer's Agent** ☑ **Transaction-Broker** in this transaction. ☐ This is a Change of Status.

Brokerage Firm's compensation or commission is to be paid by ☐ **Seller** ☐ **Buyer**

☑ Other **Seller's Proceeds - See Exhibit A**

---

Brokerage Firm's Name: **Ski Town Commercial Real Estate**

Broker's Name **Jon W. Sanders**

          10/13/11

Broker 's Signature      Date

Address: **729 Pine Street**

Phone No.: **970.871.0002**

Fax No.:

Electronic Address: **jonwsanders@skitowncommercial.com**



**EXHIBIT A**

Additional Provisions

CONTRACT TO BUY AND SELL REAL ESTATE

Between Formosa Group, LLC & Wescoin, LLLP

Dated: October 12, 2011

Capitalized terms, which are not separately defined in this Exhibit, shall have the meaning set forth in the Contract. To the extent that this Exhibit conflicts with, modifies or supplements other portions of the contract, the provisions contained in this Exhibit shall govern and control the rights and obligations of the parties.

A. **Definitions.** In addition to any other definitions appearing in the text of this Contract, when used herein the following terms shall have the respective meanings set forth below:
1) The abbreviation "ASAP" means As Soon as Possible.
2) The abbreviation "TBD" means To Be Determined.
3) The abbreviation "APD" means Amended Plat Date. The APD will be that date which finalization has occurred of any and all documents required by the City, County, Bank, and Title Company in order to amend the existing plat for the purpose of this contract and prepare a clean Title containing all property owned by or to be owned by Formosa Group, LLC mentioned within this Contract. All paperwork, regarding the amendment of the plat, will be approved and final upon the APD Date in order to move forward to close - it is not just the City or County receiving final documentation, but it is approval by all parties affected by the APD.
4) The term "Rent Payments" means the total Base Rent received by Wescoin, LLLP, or Receiver Brophy and Associates, from Formosa Group, LLC during the Lease dated 9/3/2010 from the Rent Commencement Date of that Lease through the Closing Date of this Contract.
5) The term "Option Payments" shall mean the total Option Consideration received by Wescoin, LLLP from Formosa Group, LLC within the Lease Agreements dated 9/3/2010 and 11/23/2010. This may also include the $3,500.00 which may be paid by Formosa Group, LLC for the Option Extension Payment per Lease dated 9/3/2011.
6) The term "Total Square Feet", when used with respect to the Property, means the number of square feet of the area in all parts of the Property for exclusive use of the Buyer thereof as measured upon delivery to include (i) the midpoint of studs inside demising walls, (ii) the outside surface of studs inside walls abutting common area/corridors, and (iii) to the exterior surface of the façade. The property will be measured for the amendment of the plat and appraisal, such measurement and total square feet determined by the new plat will be the actual Total Square Feet.
7) The term "Lease(s)", means those Retail Leases by and between Wescoin, LLLP, as Landlord and Formosa, LLC, as Tenant dated 9/3/2010 and 11/23/2010 attached to the Contract as EXHIBIT C – Leases.
8) The term "Option to Purchase Agreement(s)", means Exhibit H within the Leases.

B. **Option to Purchase Agreements.** Per Leases and the Option to Purchase Agreements within, Buyer/Tenant and Seller/Landlord mutually conclude and agree to the following:
1) Buyer hereby delivers to Seller written notice of Buyer's intent to purchase said Property and to exercise the Option to Purchase Agreements.

2) Seller hereby recognizes as the date of this Counterproposal, there is no existing default on behalf of the Buyer/Tenant under the terms of the Leases.

3) Seller has determined that Jonathan Melvin, ESQ will be the title company for which location and the settlement for said Contract shall occur.

4) As Option Consideration, Seller hereby acknowledges payment of $10,000.00 each per Option to Purchase Agreements, a total of $20,000.00 received as Option Consideration. $3,500.00 due on Nov 1st, 2011.

5) Buyer and Seller agree to edit the Brokers & Commission paragraph within the Option to Purchase Agreements to reflect as stated in Paragraph (H) of this Exhibit, Exhibit A.

6) In addition to the exercising the Option to Purchase Agreements, the Buyer and Seller agree to include additional space to the Contract which shall be a portion of Unit 100G and an additional portion of 100F at The Victoria and shall be approximately as defined in the Floor Plan (See Exhibit B).

7) Per the Option to Purchase Agreements, Buyer is required to make a $3,500.00 option to extend payment by November 1st, 2011 (per lease dated 9/3/2010). Buyer shall make such payment per the Option to Purchase Agreement, but such payment shall be added to the Option Payments and shall be applied to the Purchase Price.

C. **2.4 Property.** The actual Property will be determined as a portion of Unit 100F and Unit 100G, Victoria Condos, 941 Lincoln Avenue, Steamboat Springs, Colorado 80487. Legal Description shall be forthcoming after amending the current plat of the spaces consisting of portions of Unit F and portions of 100G, and the property currently owned by the Formosa Group, LLC Unit 100E. These spaces shall be adjoined and submitted for an amendment of the current plat dated April 25, 2008, and such amended plat will become the Legal Description. The Property to be purchased under this agreement equates to approximately 1,050 Total Square Feet. The Total Square Feet on the amended plat will be an approximate total Square Feet of 2,160 and parking space #20 as a Limited Common Element at 941 Lincoln Avenue and together shall become Unit 100E.

D. **6.2.2 Appraisal Objection Deadline.** The Buyer's loan for $200,000 has been preapproved, but may need to be reissued from the Bank, and will be pending based upon Appraisal; therefore this Contract will not require a Loan Condition Contingency. However, in the event the Buyer's Loan and or the Appraisal cannot be completed within time to properly close, the Buyer and Seller agree to reasonably extend the closing date.

E. **7.3 Survey.** On or before Survey Deadline, Buyer shall contract a surveyor to create documentation to provide to the City in order to obtain a New Condominium Replat.  If it is required to complete the Replat process, the surveyor will also create an Improvement Survey Plat of the interior space of the Property to be purchased and unit 100E which is currently owned by the Buyer. Buyer shall incur any and all costs associated with the amendment of the existing plat for purpose of this Contract.  Seller gives Buyer the necessary rights to proceed with such amendment and will not unreasonably withhold such right.

F. **16.2 Rents.** Both current Lease Agreements and Option Purchase Agreements between Formosa Group, LLC and Wescoin, LLLP (acceptance dates 9/3/2010 & 11/23/2010), shall continue until the closing of this Contract and then shall terminate at Closing. All Rent Payments from Formosa Group, LLC to Wescoin, LLLP under the Lease Agreement dated 9/3/2010 shall be applied to the Purchase Price. Assuming a Closing Date in November of 2011, it is understood that the total Rent Payments on the Closing Date are estimated to be $29,800 (Rent Payments). Additionally, two Option Consideration payments in the total of

$20,000 (Option Payments) paid from Formosa Group LLC to Wescoin, LLLP shall also be applied to the Purchase Price as may the $3,500.00 option extension payment for a total of $23,500.00 as (Option Payments).

G. **Door/Access Modification.** Buyer is required to move the existing entry door of Unit 100F to the next window bay within 100F (See Exhibit B). Buyer is also required to move the existing entry door of 100G to the end of the hall next to the common area bathrooms (See Exhibit B). Buyer is required to develop a scope of work document with the Seller that will describe in detail the work that will be performed and such scope of work must be agreed to by the Seller, Court Appointed Receiver and Wells Fargo Bank. Such Scope of Work Document, once completed, shall be attached to this contract as Exhibit D. Any and all cost associated to these building modifications shall be at the sole and exclusive cost of the Buyer. All improvements must be completed, per the Scope of Work document, five business days before closing.

H. **Brokers and Commissions.** Buyer has not engaged and will not engage or otherwise involve a real estate broker other than the real estate brokers listed in the Contract. Seller shall pay commissions, from Seller's Proceeds, to the Brokers as follows:  Upon closing Seller shall pay a sum of $11,660.90 ($4,800.00 to Prudential Steamboat Realty, Inc. and $6,860.90 to Ski Town Commercial, LLC).

I. If the Property is foreclosed on prior to closing this Contract, the prepaid amounts of $20,000 (Option Payments) and the $29,800 (Rent Payments) will be considered paid in full at close since Wescoin, LLLP has already received those amounts excluding November Rent Payments, and the Option Extension Payment which will be forthcoming to the Receiver of the Property, Todd Brophy, Brophy and Associates.

J. If this Contract terminates for any reason prior to close, the Lease Agreements and Option Purchase Agreements shall remain per the original terms.

EXHIBIT B

Approximate Floor Plan



Lincoln Avenue

LCE
UNIT 100-E
UNIT 100-F

VICTORIA
CONDOMINIUMS
UNIT 100-E
1,110 SQ. FT.

GCE

Unit 100-F
~1,731 SQ. FT.

New Door Access 1
Approx. 623 Sq.Ft
Approx. 427 Sq.Ft
New Door Access 2

GCE

LCE
NON-RESIDENTIAL
UNITS
(NOT A PART)

LCE
NON-RESIDENTIAL
UNITS
(NOT A PART)

GCE

Unit 100-G
~1,395 SQ. FT.

### EXHIBIT B
### Approximate Floor Plan



EXHIBIT D

SCOPE OF WORK

(To Be Completed by Buyer and attached hereto as Exhibit D)